Service: **Get by LEXSEE®**
Citation: **1997 U.S. App. LEXIS 19881**

*1997 U.S. App. LEXIS 19881, **

ROBERT L. GILLIAM; TOMMY MITCHELL, Plaintiffs-Appellees, and CARL L. VANN; ALBERT B. HUNTER, JR., Plaintiffs, v. MONTGOMERY WARD & COMPANY, INCORPORATED, Defendant-Appellant.

No. 96-1210

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

1997 U.S. App. LEXIS 19881

January 27, 1997, Argued
July 31, 1997, Decided

**NOTICE: [*1]** RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1997 U.S. App. LEXIS 40860.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, District Judge. (CA-94-1006-2).

**DISPOSITION:** REMANDED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellee employee was awarded compensatory and liquidated damages, attorney fees and costs on the employee's claim for uncompensated overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 207 et seq. Appellant employer challenged the judgment of the United States District Court for the Eastern District of Virginia.

**OVERVIEW:** The employer challenged the district court's denial of its motion for judgment as a matter of law dismissing the employee's claim and the grant, on the employee's motions, of judgment as a matter of law for compensatory damages and in the court's discretion for liquidated damages and attorney fees. The court agreed that the district court erred, vacated the judgment, and remanded for a new trial. The evidence, construed in the light most favorable to the employer, sufficed to create an issue of fact as to the employee's exempt status under the FLSA. The employer presented substantial evidence that the employee's position required a college degree, and required him to identify areas of property loss, recommend strategies to combat that loss, train employees on safety and security issues, and investigate incidents of potential in-store theft. All of these factors lead the court to conclude that there was a question of fact as to whether the employee's "primary duty" as an LP Manager was administrative. The court also held that the district court erred in awarding a specific amount of compensatory damages where only the employee presented evidence on the issue.

**OUTCOME:** The court vacated the judgment as a matter of law in the employee's favor, vacated the judgments awarding compensatory and liquidated damages and attorney fees, and remanded for a new trial.

**LexisNexis(TM) HEADNOTES - Core Concepts -** ◆ **Hide Concepts**

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions
Labor & Employment Law > Wage & Hour Laws > Exemptions

**HN1** Under the short test for determining whether an employee falls within the "administrative capacity" exemption an employee who is compensated at a rate not less than $ 250 per week and whose primary duty consists of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers which includes work requiring the exercise of discretion and independent judgment, is deemed to be in that exempt status.

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions
Labor & Employment Law > Wage & Hour Laws > Exemptions

**HN2** Under the short test for determining whether an employee falls within the "administrative capacity" exemption, in evaluating the employee's "primary duty," the regulations provide that in the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. 29 C.F.R. § 541.103. The regulations then caution that: Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of the pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. 29 C.F.R. § 541.103.

Civil Procedure > Trials > Judgment as Matter of Law

**HN3** The test for granting judgment as a matter of law against the party with the burden of proof is whether, without weighing the evidence or considering the credibility of the witnesses, there can be but one conclusion as to the verdict that reasonable jurors could have reached.

Civil Procedure > Trials > Judgment as Matter of Law

**HN4** Where the Fed. R. Civ. P. 50(a) movant has the burden on an issue, his testimonial evidence, particularly his own as an interested party, is not to be assumed in ruling on the motion as is that of a non-movant who has the burden of proof.

**COUNSEL:** ARGUED: William E. Rachels, Jr., WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellant. ON BRIEF: Amy M. Levy, WILLCOX & SAVAGE, P.C., Norfolk,

Virginia, for Appellant.

Thomas Francis Hennessy, III, HARDEE & HENNESSY, P.C., Chesapeake, Virginia, for Appellees. SuAnne L. Hardee, HARDEE & HENNESSY, P.C., Chesapeake, Virginia, for Appellees.

**JUDGES:** Before HALL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

**OPINIONBY:** PHILLIPS

**OPINION: OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by Montgomery Ward from district court judgments awarding compensatory and liquidated damages, attorney fees and costs to its employee, Thomas Mitchell, on Mitchell's claim for uncompensated overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 et seq. (West Supp. 1996). Because the district court erred in granting judgment **[*2]** as a matter of law to Mitchell both as to liability and damages, we vacate and remand for a new trial.

I

Montgomery Ward, the national retailer, operates department stores throughout the United States. Each store has a Loss Prevention Department (LP Department) that, as its name suggests, serves to minimize losses of store assets and ensure the safety of store employees and customers. At the times in issue, Mitchell was a Loss Prevention Manager (LP Manager) at a store in the Norfolk, Virginia area, and in that position was in charge of the store's LP Department.

Mitchell, along with three other employees, brought this action against Montgomery Ward, each claiming violations of § 207(a)(1) of the FLSA by failure to pay overtime compensation and violations of Title VII, 42 U.S.C. §§ 2000(e) et seq., by racial discrimination in various adverse employment decisions. As to the FLSA claims of Mitchell's (and some other plaintiffs), Montgomery Ward raised as an affirmative defense the administrative employee exemption provided by 29 U.S.C. § 213(a)(1).

In the course of an ensuing jury trial, all the claims of all the parties except Mitchell's FLSA claim were resolved in one way or **[*3]** another in favor of Montgomery Ward. As to Mitchell's FLSA claim, the only one at issue on this appeal, the proceedings took the following course. At the conclusion of all the evidence, which was devoted primarily to Montgomery Ward's administrative employee exemption defense, the district court, on the parties' Rule 50(a) cross-motions for judgment as a matter of law on the liability issue, denied Montgomery Ward's motion and granted Mitchell's. Ruling that Montgomery Ward had failed to carry its production burden on the administrative exemption defense, the court held that as a matter of law, Mitchell was not exempted by administrative status from the FLSA's overtime pay protections. In response to a further motion by Mitchell, the court then ruled that Mitchell's evidence established, as a matter of law, the extent of his overtime work as a nonexempt employee, hence his entitlement to the specific sum of $ 22,852.80 as overtime compensation for that work, and entered judgment for Mitchell in that amount. And, in response to a still further motion by Mitchell, the court entered judgment for additional sums of $ 22,852.80 in liquidated damages and $ 9,792 in attorney fees pursuant **[*4]** to 29 U.S.C. §§ 216 and 260.

Following unsuccessful motions by Montgomery Ward for reconsideration of its motion for judgment as a matter of law and, alternatively, for a new trial as to both the liability and damages issues, Montgomery Ward noticed this appeal. On it, Montgomery Ward challenges the district court's denial of its motion for judgment as a matter of law dismissing Mitchell's claim and the grant, on Mitchell's motions, of judgment as a matter of law for compensatory damages and, in the court's discretion for liquidated damages and attorney fees. n1 We take these in turn.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Montgomery Ward also noticed appeal from the district court's ruling in favor of another LP Manager plaintiff, Robert L. Gilliam, holding that he, like Mitchell, was not exempt from FLSA protection under the administrative status exemption. JA 93. In their briefs, the parties have joined issue as to this ruling and Gilliam appears as an appellee in the formal filings, but the ruling is not before us. The jury found against Gilliam on his FLSA claim (presumably on the basis that he did not prove overtime work) and final judgment against him on that

claim was entered. J.A. 26. Montgomery Ward is not an aggrieved party as to that final judgment, and may not appeal from the unfavorable interlocutory ruling subsumed within it. 28 U.S.C. § 1291. We therefore dismiss the noticed appeal from that ruling.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*5]**

II

We first consider Montgomery Ward's challenge to the district court's grant of judgment as a matter of law rejecting its administrative exemption defense and on that basis holding it liable as a matter of law to Mitchell for violation of the FLSA's overtime compensation provision.

29 U.S.C. § 207(a)(1), the basis of Mitchell's claim, obligates covered employers to pay their employees time and a half compensation for work in excess of forty hours in a work week. Montgomery Ward's defense to Mitchell's claim invoked the provisions of § 213(a)(1) which exempt from § 207(a)(1)'s protection "any employee employed in a bona fide . . . administrative . . . capacity . . . as . . . defined . . . by regulations of the Secretary [of Labor]". Montgomery Ward had the burden of proof on that affirmative defense, see Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986), and the district court's ruling in favor of Mitchell on the liability issue was based upon the court's determination that Montgomery Ward had failed, as a matter of law, to carry its burden of production on the defense. The issue for us is whether this ruling was in error, and we conclude that it was. The evidence, **[*6]** construed in the light most favorable to Montgomery Ward, sufficed to create an issue of fact as to Mitchell's exempt status under the applicable statutes and regulations.

We look first to the legal framework of this defense as established by statute and regulation.

A.

What is meant by the bald statutory language, "employed in a bona fide administrative capacity," has been fleshed out, as the FLSA contemplates, by detailed Labor Department regulations. These provide both a "long test" and a "short test" for determining whether an employee falls within the "administrative capacity" exemption. See 29 C.F.R. § 541.2 (1996). HN1 Under the short test,"an employee who is compensated . . . at a rate not less than . . . $ 250 per week . . . and whose primary duty consists of [office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers] . . . which includes work requiring the exercise of discretion and independent judgment, [is] deemed to [be in that exempt status]." 29 C.F.R. § 541.2(e)(1) and (e)(2) (incorporating language of § 541.2(a)(1)). As was its right, see 29 C.F.R. § 541.214(a), Montgomery **[*7]** Ward sought to prove exempt status under this short test.

The key elements of this test, "primary duty" and "the exercise of discretion and independent judgment," have been further fleshed out in the regulations in respects critical to the district court's challenged ruling.

HN2 As to "primary duty," the regulations provide that "in the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103 (addressing executive exception); § 541.206(b) (applying rule to administrative exemption). The regulations then caution that:

> Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might

nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of the pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees **[*8]** for the kind of nonexempt work performed by the supervisor.

29 C.F.R. § 541.103.

As to the meaning of the term "exercise of discretion and independent judgment," the regulations emphasize several critical points. After noting that "in one sense almost every employee is required to use some discretion and independent judgment," 29 C.F.R. § 541.207(d)(1), they make the obvious point that something more specific and important than such run-of-the-mill exercises of discretion and independent judgment is intended by the term. They do this by pointing up certain distinctions between that which is intended and the mere "use of skill in applying techniques, procedures, or specific standards." And relatedly, between that which is intended and the "making [of] decisions relating to matters of little consequence." 29 C.F.R. § 541.207(b).

On the first point, the regulations emphasize that the use of discretion and independent judgment in merely determining whether certain situations fall within established categories requiring specific action is not what is required. Making decisions on issues for which manuals and training provide rote answers is not the required kind of discretion **[*9]** and judgment. See 29 C.F.R. § 541.207(c)(4), (c)(5) (contrasting the exercise of discretion and judgment in fitting situations into established categories with exercises of judgment in making decisions for which there "are no recognized . . . standards").

And with respect to the degree of importance of the matters involved, the regulations emphasize that the discretion and independent judgment they contemplate "must be real and substantial, that is, . . . exercised with respect to matters of consequence." 29 C.F.R. § 541.207(d)(1). "Matters of consequence" do not include "the kinds of decisions normally made by clerical and similar types of employees," and while they obviously would include "the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility . . . the exercise of discretion and independent judgment at so high a level [is not required]." 29 C.F.R. § 541.207(d)(2). Nor, to involve "matters of consequence", need the exercise of discretion and independent judgment "have a finality that goes with unlimited authority and a complete absence of review;" it may instead "consist of recommendations **[*10]** for action rather than the actual taking of action," and "the fact that an employee's decision . . . upon occasion [is] revised or reversed . . . does not mean that the employee is not exercising discretion and independent judgment" of the type contemplated. 29 C.F.R. § 541.207(e)(1).

These regulations, defining, in the form of the "short test," what is meant by the statutory term "bona fide administrative capacity" provide the legal framework for assessing the sufficiency of Montgomery Ward's evidence to establish its exemption defense or at least to require its submission to the jury on the parties' cross motions for judgment as a matter of law. As indicated, the district court denied Montgomery Ward's motion and granted Mitchell's, on the basis that the evidence was insufficient to carry Montgomery Ward's burden of production on the defense. Reviewing those rulings de novo, see Gairola v. Commonwealth of Virginia Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985), we agree that Montgomery Ward's motion for judgment was properly denied, but conclude that the court erred in holding that the evidence was insufficient to require submission of the defense to the jury. **[*11]** Our reasons follow.

B.

The general nature of the LP Manager position held by Mitchell was established by undisputed evidence. Under the Montgomery Ward operational system, the LP Manager's immediate supervisor is the store manager, though the LP Manager also reports directly to his Zone LP Manager, who supervises Loss Prevention functions over a wide area. For example, Mitchell's Zone Manager was responsible for all of the stores in North Carolina, Virginia and Tennessee. As part of his duties, the LP Manager directly supervises any Loss Prevention Specialists (LP Specialists) who work in his store. In the stores where LP Specialists work, they monitor the store's closed circuit television system and apprehend shoplifters. Mitchell supervised an LP Specialist during the busy Christmas shopping season but otherwise operated a one-man department. Mitchell received a salary of $ 22,000 annually ($ 423.08/week), the starting salary for LP Managers, while LP Specialists were paid a maximum of $ 9.00 per hour ($ 360/week). This meant that the starting salary for an LP Manager was seventeen percent higher than the highest wage an LP Specialist could earn. According to Montgomery Ward's [*12] manuals, an LP Manager must have either a college degree and six months of experience as an LP Specialist, or a high school degree and two years of retail investigative experience. Mitchell had the required experience when he was promoted to the LP Manager position.

Beyond this basic background respecting Mitchell's LP Manager position, the parties' evidence differed significantly on the critical issues of Mitchell's "primary duties" and the extent to which he "exercised discretion and independent judgment" in carrying out those duties. Montgomery Ward presented as evidence going to both issues the official job description for its LP Managers and testimony from other LP Managers explaining that the position required LP Managers to identify areas of high inventory loss, determine the need and type of investigations necessary for suspected incidents of internal theft, conduct audits of store departments to identify deficiencies in various store control programs, and make recommendations on inventory losses and disciplinary matters and on appropriate follow-up action to ensure compliance with the store's policies. JA 257-58, 265, 314, 320.

By contrast, Mitchell's evidence characterized [*13] the LP Manager position as one that was micromanaged by a superior and guided as to the minute details of its function by thick manuals and binders promulgated by more senior employees. Mitchell, for example, testified that strictly following company procedure made his job "real easy." JA 186. And, as to whether his "primary duty" was administrative, he testified that he spent roughly equal amounts of time performing the duties of an LP Specialist and those of an LP Manager. His nonadministrative work included, he testified, apprehending shoplifters and monitoring the closed-circuit television system because of limited staff.

More specifically, Montgomery Ward presented evidence that LP Managers such as Mitchell had the authority to initiate and conduct investigations on all store personnel except store managers without securing preliminary approval and to make recommendations as to who should be terminated as a result of those investigations. It was undisputed that Mitchell supervised LP Specialists for at least part of the year and was at least partially responsible for training other employees on security and safety issues. Other LP Managers testified that the manuals and guidelines [*14] featured in Mitchell's testimony did not offer guidance to handle every situation they confronted in discharging their administrative duties. Mitchell himself testified that he had to react to different situations in interviews depending on how the interviewee responded to his interrogation. JA 230-31. Further, Montgomery Ward presented evidence that LP Managers made recommendations on safety and security issues for their stores, including how to resolve problems of high property loss. Montgomery Ward store managers testified that they relied on their LP Managers' recommendations because they were the experts in those areas, and that the LP Managers' decisions were important to the store's ongoing operations.

In assessing this evidence, much of it of course conflicting, the district court found it insufficient either to establish that Mitchell's "primary duty" was administrative in nature, or that as an LP Manager he exercised the kind of "discretion and independent judgment" contemplated by the relevant regulations. We think the court erred on both elements, and that Montgomery Ward's evidence, properly assessed on Mitchell's Rule 50 motion, sufficed to raise jury issues as to Mitchell's [*15] exempt status.

In finding insufficient evidence on the "primary duty" element, the district court apparently relied heavily, perhaps decisively, on the failure of raw quantitative proof of time spent on various tasks. "Defendant in this case offered no evidence to establish whether at least 50% of Mitchell's work was administrative." JA 50. This failed to take into account Montgomery Ward's extensive evidence that, whatever the extent of Mitchell's fill-in non-administrative work, the duties primarily assigned to him as an LP Manager and for which he was on continuous call were not these non-administrative ones, but ones of managerial, administrative character. As the regulations make plain, the quantitative 50% "rule of thumb" is only that, and is not properly made dispositive in and of itself. The courts have so understood its proper function. See Reich v. Avoca Motel Corp., 82 F.3d 238, 40-41 (8th Cir. 1995) (upholding exemption even though motel manager spent a significant amount of time performing nonexempt work because he was on call to respond to management concerns); Murray v. Stuckey's Inc., 939 F.2d 614, 618 (8th Cir. 1991) (upholding exemption even though manager [*16] spent most of his time doing nonexempt work because store managers were in charge of day-to-day operations of location); Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1144-45 (3d Cir. 1984) (upholding exemption for section foremen even though they spent only forty-four percent of their time on the job performing nonexempt work).

Here, Montgomery Ward presented substantial evidence that, as the regulations contemplate may be the case, there were other factors concerning the nature of Mitchell's position and his performance that were more probative of the primacy of his administrative duties than any raw time-spent factor. Mitchell, for example, conceded that his duties required him to identify areas of property loss, recommend strategies to combat that loss, train employees on safety and security issues, and investigate incidents of potential in-store theft. Montgomery Ward presented evidence, essentially undisputed, that such duties are important to Montgomery Ward's operations, and more important than an LP Specialist's shoplifting prevention responsibilities. There was further evidence that LP Managers were relatively free from supervision, and that store managers, [*17] operationally their superiors, relied upon the LP Managers' expertise for security and safety issues. Finally, it was undisputed that the starting salary for LP Managers was seventeen percent higher than the highest wage for an LP Specialist. All of these factors lead us to conclude that there was a question of fact as to whether Mitchell's "primary duty" as an LP Manager was administrative. This issue, as we have observed, is one that typically "requires consideration of the factual circumstances for which a jury is more appropriate," Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 n.2 (4th cir. 1986), and on the evidence advanced here, that was surely the case.

In ruling that the evidence was insufficient to support the requisite finding that Mitchell "exercised discretion and independent judgment" of the required kind, the district court again relied heavily, perhaps decisively, on Mitchell's own testimony that his performance was rote and book-bound. In the district court's words it was "constrained . . . by the policies, manuals, and standard procedures of . . . Montgomery Ward." JA 47. Relying essentially on Mitchell's selfserving testimony, which was directly countered [*18] by Montgomery Ward's, the court determined that the manuals and guidelines narrowly limited Mitchell's freedom of action in response to various situations and that LP Managers could not in general change company policies but could only make recommendations. In so crediting Mitchell's testimony, the court discounted the probative value of countering evidence by Montgomery Ward that, for example, LP Managers such as Mitchell were responsible for settling small accident claims and had to make decisions with regard to investigations of in-store personnel for possible theft. JA 48-50.

By crediting Mitchell's testimony on the range of discretion and independent judgment he possessed over flatly opposing evidence of Montgomery Ward, the district judge seems to have overlooked that in ruling on Mitchell's Rule 50(a) motion he must assess the evidence in the light most favorable to Montgomery Ward. In any event, we are satisfied that in discounting Montgomery Ward's evidence, the court relied much too heavily on the effect of the company's manuals and directives in constraining the discretion and independent judgment of LP Managers such as Mitchell. On this point, the Second Circuit's decision [*19] in Donovan v. Burger King Corp., 675 F.2d 516 (2d Cir. 1982), is instructive. There, a Burger King managerial employee contended, as does Mitchell here, that his authority to act was severely limited by extensive corporate regulations and standards that dictated to a large extent how he managed the business. In affirming a district court decision that the employee's duties brought him within the administrative exemption, the court said:

> We fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to "the book." Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made.

675 F.2d at 521-22. See also Murray v. Stuckey's, Inc., 50 F.3d 564, 569-70 (8th Cir. 1995) (rejecting argument that existence of company policies and guidelines for store manager circumscribed [*20] discretion so as to render him non-exempt). For similar reasons, we conclude that the district court gave much more weight than was proper here to the impact of Montgomery Ward's manuals and directives in constraining the discretion and judgment, for FLSA purposes, of its LP Managers. While their impact surely is a relevant factor in assessing the extent of that discretion and judgment, it as surely does not warrant the conclusion that it precludes a jury finding in Montgomery Ward's favor on this issue. On that issue, properly assessed, there was conflicting evidence that required its submission to the jury.

We therefore conclude that the district court erred in rejecting as a matter of law Montgomery Ward's administrative exemption defense and on that basis, granting judgment as a matter of law to Mitchell on the issue of liability. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 By the same token, we affirm the district court's denial of Montgomery Ward's motion for judgment as a matter of law based upon the defense. The evidence required its submission to the jury over both parties' cross-motions for judgment.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*21]

III

Montgomery Ward also challenges the district court's entry of judgment as a matter of law awarding Mitchell a specific amount of compensatory damages. We believe the court did err in that respect as well, and we will discuss the error briefly in order to avoid its repetition were the damages issue to be presented again on the new trial we will order.

The district court made its award as a matter of law on the basis that Montgomery Ward had

not directly contradicted Mitchell's evidence--essentially his own testimony--as to the number of overtime hours he had worked. In so ruling, the district court expressly relied upon and applied HN3 the test for granting judgment as a matter of law against the party with the burden of proof, citing our formulation of that test in Gairola v. Commonwealth of Virginia Dept. of Gen. Servs., 753 F.2d 1281 (4th Cir. 1985): "whether, without weighing the evidence or considering the credibility of the witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.'" Id. at 1285 (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir. 1981)). Applying that test, the court apparently concluded that [*22] because Mitchell's testimony as to his overtime hours was not directly contradicted, though subjected to impeaching crossexamination, reasonable jurors could indeed reach but one conclusion. But the court then awarded not the amount required, if Mitchell's uncontradicted testimony provided that conclusion, but an amount considerably less that the court, apparently rejecting Mitchell's credibility in part, chose as a matter of its own judgment.

This surely reflected the court's failure to apply the proper test where, as here, the moving party, Mitchell, had the burden of proof on the dispositive issue. In that circumstance, judgment as a matter of law may be awarded, but only in "extreme cases." 9A Charles Allen Wright, Arthur Miller, Federal Practice and Procedure § 2535, at 325 (2d ed. 1995). For HN4 where the Rule 50(a) movant has the burden on an issue, his testimonial evidence, particularly his own as an interested party, is not to be assumed in ruling on the motion as is that of a non-movant who has the burden of proof. Id. , § 2527, at 286. In this circumstance, judgment as a matter of law could be proper only if the jury could not reasonably fail to accept the interested [*23] party's testimony. Id. Such situations can occur, but they obviously are rare, since witness credibility (unless essentially conceded by the opponent or literally compelled as irrefutable physical fact) is classically a question for the jury. That such a rare situation was not presented here is best shown by the district court's failure in awarding damages to accept Mitchell's full credibility on the issue.

This was not a case where compensatory damages in an exact amount could properly be awarded as a matter of law on the motion of the party having the burden to prove damages. If the compensatory damages issue should again be presented, the district court should proceed in light of this reminder.

IV

In view of our vacatur of the judgment for compensatory damages, we must also vacate the district court's dependent discretionary award of liquidated damages and attorney fees. The claims for these must be addressed anew if again presented upon the new trial we order. % TV

We therefore vacate the judgments awarding compensatory and liquidated damages and attorney fees and remand for a new trial in accordance with this opinion.

SO ORDERED

Service: **Get by LEXSEE®**
Citation: **1997 U.S. App. LEXIS 19881**
View: Full
Date/Time: Friday, June 6, 2003 - 1:30 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.