IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARMEN GIBSON | * | |
|     Plaintiff | * | |
| v. | * | Civil Action No.: WDQ-02-3827 |
| ENCORE MARKETING INT'L, INC. | * | |
|     Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PRETRIAL ORDER

The parties, by and through their respective counsel, hereby submit the following Pretrial Order, and state as follows:

**A. Plaintiff's Facts**

During her employment with Defendant Encore Marketing International, Inc. from October 1995 through May of 2001,[1] Plaintiff performed primarily clerical tasks related to the collection, tabulation, and dissemination of data which concerned the Defendant's various marketing programs and products. She conducted no in-depth analysis of this data and played no role in determining its significance to the macro-level operation of the company. Moreover, Plaintiff performed her duties at all times under the supervision and/or at the direction of her superiors.

Considering the highly clerical nature of her duties, Plaintiff clearly should have been classified by Defendant as non-exempt from the overtime provisions of the Fair Labor Standards Act (hereinafter "FLSA") and its Maryland equivalent. Defendant's failure to so classify Plaintiff, and its resulting failure to compensate Plaintiff for her overtime hours, renders the

---

[1] The pertinent time period for purposes of this litigation is the 18-month period of November 22, 1999 through May 31, 2001. The former date is exactly three years before this suit was filed and the latter date was Plaintiff's final day of employment with Defendant.

company liable to Plaintiff for all unpaid overtime wages accumulated between November 1999 and May 2001, as well as liquidated or treble damages.  *See infra* Parts C and G.

As for her overtime hours, Plaintiff worked, on average, from at least 8:00 a.m. until 6:00 p.m. Monday through Friday, minus an average of 15 minutes per day for a lunch break, for a total of 48.75 hours per week.  In addition, Plaintiff generally worked another 3 hours per week during the late weekday evenings and/or on Saturday mornings.  Thus, Plaintiff worked an average of 11.75 hours of overtime per week throughout the 18-month period at issue in this case.  *See infra* Part G.

A more thorough discussion of the facts Plaintiff will establish at trial has been previously set forth in her Opposition to Defendant's Motion for Summary Judgment.  The Court is respectfully referred to said Opposition as a supplement to the statement of facts detailed hereinabove.

### B. Defendant's Facts

The Plaintiff was employed in various job positions while with Encore from October 1995 through May 2001. Plaintiff's positions included Customer Service Representative, Senior Customer Service Representative, Quality Specialist, Telemarketing Specialist, Telemarketing Manager, and Campaign Manager.  Plaintiff's claims are based only on positions held from November 1999 – May 2001, which included Telemarketing Process Specialist, Telemarketing Account Manager, and Campaign Manager.

The Plaintiff was promoted several times at Encore, including in December 1996 to Senior Representative, a promotion to Monitoring Specialist, and in July 1998 a promotion to the telemarketing department as Tape Processing Coordinator.  Each transition was a promotion and each promotion came with a pay raise.  In December 1998, the Plaintiff was again promoted, this

time to Telemarketing Process Specialist and at this point became a salaried employee. Then, in June 2000, Plaintiff was promoted to Teleservices Manager, and received a pay raise to approximately $38,000.00, and in March 2001, was promoted to Campaign Manager with a pay raise to approximately $48,000.00. At the time, Plaintiff's employment ended on May 31, 2001, her annual salary was $48,000.00.

Plaintiff became a salaried, exempt employee when she accepted the position as a Telemarketing Process Specialist. During the relevant time period (November 1999 – May 2001), the Plaintiff was an exempt employee under both the FLSA and the MWHL, and as such the Defendant was not obligated to pay her overtime (time and one half).

As a Telemarketing Process Specialist, the Plaintiff had great responsibility and exercised independent thinking, judgment and discretion. In this position, Plaintiff's duties included monitoring customer service representative's telephone calls to ensure quality service, accuracy and professionalism. The Plaintiff provided automatic feedback, which included analysis, criticism and suggestions for improvement. The Plaintiff could unilaterally remove a customer representative from a campaign and/or send a representative for more training.

As a Telemarketing Manager, Plaintiff's responsibilities increased from her prior position. She became responsible for duties including, but not limited to: reviewing reports from outside vendors, disseminating information to vendors, monitoring customer service representatives, working with the information technology department to startup new programs, working with the accounting department, being in day-to-day contact with vendors, reviewing vendors' performance results daily, and attending high-level meetings. In addition to the added responsibilities, Plaintiff also received a pay raise when promoted to the position of Telemarketing Manager.

The Plaintiff's responsibility and importance to the company are also evidenced by the business trips she took to vendor sites on behalf of Encore and/or Encore's clients. The frequency of these trips varied, but appear to average to approximately once a month. The trips were out of town and required the Plaintiff to spend at least one night at a hotel. The Plaintiff did not always travel with a direct supervisor on these trips. The Plaintiff observed the vendor site and performance and reported back her findings, observations and suggestions to Encore and/or to the client. The Plaintiff had an automatic expense account of $100.00 for each trip to spend at her discretion.

In March 2001, Plaintiff was again promoted, this time to the position of Campaign Manager. Her annual salary rose to approximately $48,000. Plaintiff's duties generally included the same as those performed as a Teleservices Manager.

The positions of Teleservices Manager, Campaign Manager and Telemarketing Manager were not entry-level positions. In fact, it took the Plaintiff over three (3) years with the company to advance to these positions. Accompanying these promotions, the Plaintiff always received pay raises. From the time the Plaintiff undertook the role of Telemarketing Process Specialist (in December of 1998) until the Plaintiff's last day with the Defendant (May 31, 2001), her annual salary went from $29,993.60 to $48,065.00 (a 37.6% raise in less than three years).

The Plaintiff was compensated on a bi-weekly basis throughout her employment with Encore. Additionally, she received fringe benefits, including a 401(k) and medical and dental insurance as a consequence of her employment with Encore. Plaintiff's work hours prior to becoming a Telemarketing Process Specialist were tracked through the use of her work telephone. After this position, and once Plaintiff reached a salaried level, her hours were no longer formally tracked by Encore. Nevertheless, the Plaintiff claims to have vigilantly kept

track of her hours on her work calendar.  The Defendant discusses the inadequacies of this method and the pure speculation involved therein *infra* at Section G.

The Plaintiff was, *de facto*, the entire Telemarketing Department in Defendant's Lanham office.  In summary, the Plaintiff held positions of responsibility and importance in which she exercised independent judgment and discretion.  While employed in the three relevant positions, the Plaintiff often stated that she was doing the work of more than one person and had a vast amount of responsibility.  She most often highlighted her large amount of responsibility when she was negotiating a new salary or position.  The witnesses and the evidence will show that the Plaintiff was, in fact, performing duties of critical importance to Encore and had a great amount of responsibility and independence in her employment position – making her exempt under both the FLSA and the MWHL.

More in-depth recitations of the facts are contained in Defendant's Motion for Summary Judgment and Reply to Opposition to Motion for Summary Judgment, which are incorporated herein by reference.

### C.  Amendments Required of the Pleadings

**PLAINTIFF:**

Plaintiff does intend to move for an amendment to her Complaint in order to add a claim for treble damages under Maryland's Wage Payment and Collection Law.  *See* Md. Code Ann., Labor & Employ. § 3-507.1.  When the Complaint was initially filed, it was unclear whether such an action could be maintained under Maryland law for the recovery of unpaid overtime wages.  However, since that time, the matter has been clarified by the Maryland Court of Appeals, and such a claim is now clearly permitted.  *See Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003).  The addition of this claim will not materially alter any of the legal or factual

issues in the case. It will only increase the total amount of non-compensatory damages that can potentially be recovered by Plaintiff.

**DEFENDANT:**

The Defendant does not consent to Plaintiff's intentions to amend the complaint to add a cause of action under Md. Labor and Employment Code Ann. § 3-507.1. Plaintiff's ability to maintain a claim under § 3-507.1 and claim treble damages was available to Plaintiff when she filed the Complaint, as treble damages is in the language of the statute. Furthermore, recovery of treble damages under § 3-507.1 carries an additional burden of proof -- it must be shown that the employer withheld the employee's wages in violation of the statute and *not* as a result of a bona fide dispute. *See* Md. Labor and Employment Code. Ann. § 3-507.1(b). (Whether or not a bona fide dispute occurs here is, of course, a question for the jury.) Also, even though the Plaintiff relies on the case of *Friolo v. Frankel*, 373 Md. 501 (2003) as her reason for not amending the Complaint sooner, this case really does not shed new light or understanding on the issue of treble damages and does not create any new rights that were not available to Plaintiff before now. An amendment now, with a few days' notice before the joint pre-trial statement is due, should not be allowed, as discovery was not conducted on this weighty issue and as the Defendant would be unduly prejudiced if it was not required to defend itself against this new claim. If the Court intends to allow this amendment at this late juncture, the Defendant respectfully requests a continuation of the trial of this matter and the re-opening of discovery limited to the Plaintiff's new claim and surrounding evidence.

### D. Stipulation of Fact

None at this time.

### E. Plaintiff's Requested Stipulations of Fact

None at this time.

### F. Defendant's Requested Stipulations of Fact

None at this time.

### G. Damages

**PLAINTIFF:**

Plaintiff worked an average of 11.75 hours of overtime per week during the period of November 1999 through May 2001. As illustrated below, taking into account Plaintiff's various pay rates over the course of this 18-month time-span, she is owed approximately $25,235 in unpaid overtime wages by Defendant.

| Time period | No. of Weeks | | No. of Hrs OT/week | | OT Rate | | Totals |
|---|---|---|---|---|---|---|---|
| 11/22/99 to 12/13/99 | 3 | x | 11.75 | x | $21.63 | = | $762 |
| 12/14/99 to 5/31/00 | 25 | x | 11.75 | x | $22.94 | = | $6,739 |
| 6/1/00 to 3/18/01 | 41 | x | 11.75 | x | $27.51 | = | $13,253 |
| 3/19/01 to 5/31/01 | 11 | x | 11.75 | x | $34.67 | = | $4,481 |
| | | | | | GRAND TOTAL | = | $25,235 |

Under the FLSA, Plaintiff would additionally be entitled to an equal amount in liquidated damages, for a total of $50,470. *See* 29 U.S.C. § 216(b). Alternatively, under Maryland's Wage Payment and Collection Law, Plaintiff is entitled to seek treble damages, for a total of $100,940. *See Supra* Part C. Finally, under both Maryland law and the FLSA, Plaintiff is entitled to recover her attorney's fees.

**DEFENDANT:**

The Defendant did not have actual knowledge of Plaintiff's alleged overtime hours, therefore defeating her liquidated damages claim. If anything, Plaintiff was on an honor system regarding whether she was even completing forty (40) hours per week; as many of those hours were completed outside of the office. Defendant's policy, as documented in its employee handbook, requires anyone who works overtime to first obtain permission and approval from the Department Director. The Plaintiff did not do this during the relevant time period. If the Defendant never requested that the Plaintiff work overtime hours and was unaware of Plaintiff's alleged overtime, the Defendant cannot be held liable for failing to pay for performance of which it was unaware.

Furthermore, there is no evidence that the Defendant's actions were willful. Since it is Plaintiff's burden to provide evidence of willfulness in order to reap the benefits of the three-year statute of limitations, without any such evidence, the statute remains at two years and those claims outside of two years automatically fail and must be disregarded by the jury.

Lastly, the Defendant does not concede liability in this case and, accordingly, does not believe that any damages are owed the Plaintiff. However, if the Defendant is found liable to the Plaintiff, little to no damages can be awarded because they cannot be proven with any amount of certainty. First, because the Plaintiff worked a flexible schedule (that she, herself, set), which had her leaving much earlier than other employees, the Plaintiff cannot prove that she ever worked more than forty (40) hours per week, nor can she prove that her alleged nighttime and Saturday hours amounted to more than eighty (80) hours of work in a two-week period. Second, the "evidence" the Plaintiff has that allegedly documents her overtime hours is ambiguous, vague and highly speculative – making it impossible for the jury to award compensatory damages with

any amount of certainty. The Defendant refers the Court to its Motion for Summary Judgment and Reply to Opposition to Motion for Summary Judgment, incorporated by reference herein, for the discussions of the law regarding damages and the highly speculative damages that are based on nothing but conjecture.

In fact, the evidence will show that if, *arguendo,* the Plaintiff should have received overtime compensation from the Defendant during the relevant time period, only approximately $1,500 in compensatory damages is due the Plaintiff. The amount of compensatory damages as allegedly documented by the Plaintiff can be calculated from the calendar days provided by the Plaintiff as "proof" that she worked from home. The Plaintiff states that call monitoring sessions tended to take about an hour and a half, and when she worked on a weekend, it would only be on a Saturday and tended to be for 2-3 hours. Assuming, *arguendo*, that this is true, although there is evidence to the contrary, Defendant allotted 1.5 hours for every weekday provided by Plaintiff and 3 hours for every weekend day provided by the Plaintiff in her calendar. [Note: from June 2000 through March 2001, Plaintiff earned $38,000/year or $18.27/hour based on a 40-hour week. From March 2001 through May 2001, Plaintiff earned $48,000/year or $23.08/hour.] Using Plaintiff's 29 calendar days of alleged overtime, her damages are as follows:

[11 weekdays prior to March 2001 x 1.5 hours per day] x $27.41/hr. =     $452.27

[4 weekend days prior to March 2001 x 3 hours per day] x $27.41/hr. =     $328.92

[14 weekdays post March 2001 x 1.5 hours per day] x $34.62/hr. =     $727.02

**GRAND TOTAL =   $1,508.21**

**H.  Plaintiff's Exhibits**

*1.  Exhibits Plaintiff Expects to Offer*

1. Defendant's Answers to Interrogatories*

9

2. Defendant's Answers to Interrogatories in the case of *Grasso v. EMI, Inc.**

3. Defendant's Response to Request for Production of Documents*

4. Defendant's Resp. to Req. for Prod. of Documents in *Grasso v. EMI, Inc.**

5. Defendant's Employee Handbook, revised April 15, 1998*

6. Defendant's "Salary Increase Recommendation" sheets for Plaintiff (7 total)*

7. All of Defendant's "Personnel Change Notice" sheets for Plaintiff

8. Plaintiff's appointment calendar for November 2000 through May 2001

9. Defendant's list of job titles with corresponding codes, dated Jan. 5, 1980*

10. Plaintiff's June 8, 2001 paycheck and stub*

11. Defendant's "Payroll Register" for Plaintiff for October 1999*

12. Defendant's "Payroll Register" for Plaintiff from Dec. 1999 to May 2001*

13. Defendant's "Master Control" sheets for Plaintiff (all 3 produced by Defendant)

14. July 26, 2000 memo from Hash to Doherty re: Plaintiff's pay increase

\* Defendant agrees these exhibits may be offered into evidence without the usual authentication.

### 2. Exhibits Plaintiff Will Offer If the Need Arises

1. Defendant's Answer to Complaint*

2. Plaintiff's W-2 statements from 1998-2001*

3. Plaintiff's Dec. 3, 1997 application for "Tape Processing Coordinator"*

4. Plaintiff's July 21, 1997 app. for "Customer Care Monitoring Specialist"*

5. "Interview Sheet – Monitoring Specialist" by Joan Pesci, undated*

6. "Interview Sheet – Membership Services" by Felicia Watkins, undated*

7. July 31, 1997 "Team Leader Interview Questions" sheet*

8. Nov 16, 1995 "Receipt for Employee Handbook" signed by Plaintiff

9. June 7, 2000 e-mails exchanged between Plaintiff and Hannabas regarding the need for additional help*

10. July 10-14, 2000 series of e-mails exchanged between Hannabas and Files regarding Plaintiff's salary and related matters

11. Plaintiff's July 1997 performance appraisal and accompanying attachments

12. "Encore Membership Services Call Monitor Form," undated

13. Plaintiff reserves the right to offer any other exhibits listed by Defendant.

\* Defendant agrees these exhibits may be offered into evidence without the usual authentication.

### I. Defendant's Exhibits

#### *1. Exhibits Defendant Expects to Offer*

1. Plaintiff's Answers to Interrogatories*

2. Plaintiffs' Response to Request for Production of Documents

3. Email from Carmen Gibson to Kelly Hannabas dated June 7, 2000

4. Email from Carmen Gibson to Kelly Hannabas dated July 13, 2000

5. Email from Kelly Hannabas to Carmen Gibson dated June 7, 2000

6. Email from Kelly Hannabas to Carmen Gibson dated May 24, 2000 "re: position."

7. Payroll Register period ending 12/31/99, pay date 1/7/00

8. Email from Kelly Hannabas to Kim Files dated July 10, 2000 and Kim Files' initial email to Kelly Hannabas

9. Job Description for Telemarketing Manager attached to Hannabas-Gibson email [2 pages].

10. Defendant expressly reserves the right to offer any exhibits listed by Plaintiff

\* Plaintiff agrees this exhibit may be offered into evidence without the usual authentication.

#### *2. Exhibits Defendant Will Offer If the Need Arises*

1. Deposition transcript of Carmen Gibson*

11

2. Affidavit of Kelly Hannabas-Bourdon*

3. Email from Kelly Hannabas to Kim Files dated May 24, 2000

4. Letter from Encore to Carmen Gibson dated May 29, 2001*

5. Salary Increase Recommendation issued 10/22/99*

6. Salary Increase Recommendation dated 7/14/00*

7. Note to file dated May 22, 2001

8. Memorandum from Jim Kannar dated May 11, 1998 to Carmen Whittaker

9. Dave Gallimore's work calendar from January 2001 through May 2001 [*Note: this exhibit has not yet been located, if and when it is, a full copy will be forwarded to Plaintiff's Counsel*]

10. Review for Carmen Gibson dated 12/31/97 by Joan Pesci

11. Email from June 29, 2000

12. Expense report email dated June 8, 2001

* Plaintiff agrees these exhibits may be offered into evidence without the usual authentication.

### J. Plaintiff's Witnesses

#### *1. Witnesses Plaintiff Expects to Call*

1. Plaintiff Carmen Gibson
   333 Meadow Way
   Hyattsville, Maryland 20785

2. Kelly Hannabas-Bourdon
   270 Montego Way
   Ponte Vedra Beach, Florida 32083

3. John Bourdon
   10135 Gate Parkway Drive North, Unit 1305
   Jacksonville, Florida 32246

4. Dana J. Grasso
   4419 S. 36th Street, Unit B1
   Arlington, Virginia 22206

5. Felicia Watkins-White, Director of Human Resources
   Encore Marketing International, Inc.
   4501 Forbes Boulevard
   Lanham, Maryland 20706

6. Rodena Brown
   Current Address Unknown

7. Laura Dickson
   Current Address Unknown

### *2. Witnesses Plaintiff Will Call If the Need Arises*

1. Bernard Gibson
   123 Cindy Lane
   Capitol Heights, Maryland 20743

2. David A. Gallimore
   515 Autumn Wind Way
   Rockville, Maryland 20850

3. Lyndsay Marchese
   Current address unknown

4. Deborah Chapin
   Current address unknown

5. Michael Stott
   Current address unknown

6. Pamela Rubin
   12005 Bronze Gate Place
   Silver Spring, Maryland 20904

7. Joyce Fulton
   Current address unknown

8. Tom Deliso
   Encore Marketing International, Inc.
   4501 Forbes Boulevard
   Lanham, Maryland 20706

9. Juanson Pitt
   Current address unknown

13

10. Gabrielle Nickens-Garner
    Current address unknown

11. Rob Channon
    Current address unknown

12. Beth Bell
    1303 Seashell Court
    Baltimore, Maryland 21226

13. Jackie Hudson
    Current address unknown

14. Gaye Banks
    Current address unknown

15. Camille Regist
    Current address unknown

16. Jane Bowling
    Current address unknown

17. Joan Pesci
    Current address unknown

18. Plaintiff reserves the right to call any other witnesses listed by Defendant.

### K. Defendant's Witnesses

#### *1. Witnesses Defendant Expects to Call*

The Defendant expects to call the following witnesses:

1. Plaintiff Carmen Gibson
   333 Meadow Way
   Hyattsville, Maryland 20785

2. Kimberly Files
   4501 Forbes Blvd.
   Lanham, MD 20706

3. Elizabeth Bell
   1303 Seashell Court
   Baltimore, MD 21226

4.  Dave Gallimore
    4501 Forbes Blvd.
    Lanham, MD 20706

5.  Tom Deliso
    4501 Forbes Blvd.
    Lanham, MD 20706

### *2. Witnesses Defendant Will Call If the Need Arises*

1.  Lindsay Marchese
    Current Address Unknown

2.  Pamella Roberts-Rubin
    12005 Bronze Gate Place
    Silver Springs, MD 20904

3.  Laura Dickson
    4501 Forbes Blvd.
    Lanham, MD 20706

4.  Deborah Chapin
    Current address unknown

5.  Defendant expressly reserves the right to call any witnesses listed by Plaintiff

### L.  Plaintiff's Deposition Designations

1. David A. Gallimore, Defendant's Executive Vice-President of Marketing, July 1, 2003 deposition: pp. 9-10, 12, 20-21, 25-27, 30, 35-45, 62-64, and 71-72.

2. David A. Gallimore, Defendant's Executive Vice-President of Marketing, March 4, 2003 deposition in the case of *Grasso v. EMI, Inc.*: pp. 21 and 23.

3. Felicia Watkins-White, Defendant's Director of Human Resources, March 4, 2003 deposition in the case of *Grasso v. EMI, Inc.*: pp. 9-16, 23-28, 32-36, and 57-58.

4. As for counter-designations, since Defendant has chosen to designate lines from nearly every page of Plaintiff Carmen Gibson's May 14, 2003 deposition, Plaintiff will reserve the right to counter-designate each of the relatively few remaining pages and lines.

### M.  Defendant's Deposition Designations

1. Carmen Gibson, Plaintiff, Wednesday, May 14, 2003: pp. 8 lines (2-14); 12(17-22); 13(1-15); 15(3-22); 16(11-12); 17(1-22); 18(1-19); 21(8-22); 22(5-21); 24(22); 25(1-8);

15

27(3-16); 28(1-6); 30(6-22); 31(1-14); 33(1-6); 38 (8-15); 40(16-22); 41(1); 43(6-22); 44(19-22); 45(1-22); 46(1-2/12-21); 47(5-13); 48(3-4/16-20); 49(13-17); 50(4-22); 51(17-22); 52(1-2/4-19); 58(5-12/19-21); 54(10-19); 56(7-13/18-22); 57(1-4/7-16/22); 58(1-8); 61(11-22); 62(1-22); 63(1-4); 64(5-10/14-19); 65(1-5/7-10); 66(1-3); 68(15-22); 69(1-4/10-19); 72(1-11); 73(1-13); 75(15-22); 76(1-22); 77 (1); 80(20-22); 81(1-22); 83(21-22); 84(1-4); 87(11-22); 88(11-19); 92(12-22); 93(1-4/8-22); 94(1-4/16-22); 95(1-2/21-22); and 96(1-6).

### N. Other Requests for Pretrial Relief

**PLAINTIFF:**

Plaintiff hereby moves this Honorable Court to award liquidated damages in this case as a matter of law. It is well settled that, in order to avoid an award of liquidated damages in an FLSA case, the employer bears "the 'difficult' burden of proving both subjective good faith and objective reasonableness, 'with double damages being the norm and single damages the exception.'" *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2nd Cir. 1999)). If the employer fails to carry this burden, liquidated damages are mandatory. *Id*.

Subjective good faith "requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich v. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2nd Cir. 1997). *See also Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990). As for the objective standard, "[i]gnorance alone will not exonerate the employer." *Martin v. Cooper*, 940 F.2d 896, 907 (3rd Cir. 1991). Specifically, "[a]n employer may not take an 'ostrichlike' approach to the FLSA by 'simply remain[ing] blissfully ignorant of [its] requirements.'" *Lockwood v. Prince George's County*, No. 99-2487, 2000 WL 864220 at

\*6 (4th Cir. June 29, 2000) (citing *Roy v. County of Lexington*, 141 F.3d 533, 548 (4th Cir. 1998)).

In this case, Defendant was expressly asked by Plaintiff in her Interrogatories to "[d]escribe in detail all efforts made by you to determine whether Plaintiff was an exempt or non-exempt employee for purposes of the federal Fair Labor Standards Act or the Maryland Wage and Hour Law." After asserting an objection on the basis that the Interrogatory calls for a legal conclusion, which is not a proper objection, Defendant cavalierly indicated, under oath, that it had made no effort whatsoever because "Ms. Gibson never asked for clarification as to her job classification." Def.'s Ans. to Interrogatory No. 8.

Defendant's answer did also refer Plaintiff to its Answer to Interrogatory No. 7. However, Defendant's Answer to Interrogatory No. 7 merely described Plaintiff's duties. It made no reference to any actions taken by Defendant itself to determine whether Plaintiff should be designated by the company as exempt or non-exempt. *See* Def.'s Ans. to Interrogatory No. 7. Apparently, Defendant believes that the exempt status of Plaintiff was so self-evident that taking such action was simply not necessary, absent a request to do so by Plaintiff herself.

However, Defendant cannot shield itself from liability for liquidated damages by pointing the finger at Plaintiff. Defendant, and Defendant alone, was obligated to actually do something in a good faith attempt to determine whether Plaintiff was classified correctly as exempt. Doing nothing clearly cannot be equated with subjective good faith. And doing nothing certainly cannot be considered objectively reasonable. Thus, doing nothing cannot, as a matter of law, constitute grounds for avoiding the imposition of liquidated damages. Accordingly, Plaintiff respectfully requests that this Court so hold.

Additionally, Plaintiff moves this Court to strike Defendant's designation of Kim Files as a witness (No. 2 in Part K.1. above) and David Gallimore's work calendar as an exhibit (No. 9 in Part I.2. above).  Ms. Files was not included as a witness in Defendant's Answers to Interrogatories and Mr. Gallimore's calendar was not produced in response to Plaintiff's Request for Production of Documents.[2]  Plaintiff has been irreparably prejudiced by Defendant's failures in this regard.  If Defendant had listed Ms. Files as a witness in its Answers to Interrogatories, Plaintiff would have taken her deposition.  Furthermore, if Mr. Gallimore's calendar had been produced, Plaintiff would have asked him about it in deposition.  Plaintiff notes for the record that all of her exhibits and witnesses listed hereinabove were revealed to Defendant in the ordinary course of discovery.

Finally, Plaintiff expressly reserves the right to supplement or amend its portions of the forgoing Pretrial Order.

**DEFENDANT:**

The Defendant had a policy whereby employees and their positions were periodically reviewed to analyze the quality, quantity and responsibility of their duties.  The Defendant did, in fact, pay the Plaintiff overtime pay when she was a lower-level employee and was deemed to be non-exempt pursuant to the FLSA.  The Plaintiff's specious argument to the contrary is without merit.  The evidence will show that the Defendant asked the Plaintiff and her supervisor, Plaintiff's witness, Kelly Hannabas, for a comprehensive list of all of the Plaintiff's duties and responsibilities.  This description, the Plaintiff's own words, was analyzed by the Defendant to determine her job title, pay grade (exempt status) and salary.  This shows that the Defendant

---

[2] Plaintiff believes, but is frankly not certain, that Defendant also failed to produce the "Review for Carmen Gibson dated 12/31/97 by Joan Pesci" (No. 10 in Part I.2. above).

acted in good faith and made reasonable efforts to determine the Plaintiff's exempt status. As such, liquidated damages are not warranted in this case.

Additionally, as mentioned, *supra*, the recovery of treble damages under § 3-507.1 carries an additional burden of proof, as it must be shown that the employer withheld the employee's wages in violation of the statute and *not* as a result of a bona fide dispute. *See* Md. Labor and Employment Code. Ann. § 3-507.1(b). The existence of a bona fide dispute in this case is certainly a jury question and not a matter of law for the Court to decide.

Lastly, the Defendant expressly reserves the right to supplement or amend its Pretrial Statement.

Respectfully submitted,

_____
Philip B. Zipin
Neil R. Lebowitz
Zipin Melehy & Driscoll LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
301-587-6364
Counsel for Plaintiff

_____
Timothy F. Maloney
Veronica Byam Nannis
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301-220-2200
Counsel for Defendant

Reviewed and approved this _____

day of _____, 2004:

_____
J U D G E, United States District Court
for the District of Maryland

19